No. 15,343.

McGLONE ET AL. *v.* CITY AND COUNTY OF DENVER.

(163 P. [2d] 646)

Decided October 1, 1945.   Rehearing denied November 26, 1945.

Mr. WILLIAM F. McGLONE, Messrs. BANCROFT, BLOOD & LAWS, for plaintiffs in error.

Mr. MALCOLM LINDSEY, Mr. THOMAS H. GIBSON, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THE City and County of Denver obtained a judgment against its manager of revenue, who by virtue of that office was ex officio treasurer of the City and County of Denver, and his bondsman, the Continental Casualty Company, in the amount of $14,483.33. This judgment was based upon a bond, executed by the manager of revenue as principal and the bonding company as surety, given to secure the faithful performance of the official duties of the manager of revenue. Principal and surety bring the case here by writ of error. We shall refer to the parties as they appeared in the trial court. There is no conflict of evidence in the case. The facts, agreed upon by stipulation between the parties, include the following:

The Denver city council adopted three ordinances: one in 1914 providing for the issuance of $8,000,000 municipal water bonds; one in 1923 authorizing an additional $6,500,000; and one in 1928 authorizing the issuance of municipal refunding water bonds, series of 1927. All three ordinances contained the provision that the principal and interest of the bonds should be payable at the option of the holder at the banking house of Kountze Brothers in New York City or at the office of the treasurer of the City and County of Denver. Previous to the adoption of each ordinance, issuance of the pertinent bond issue had been duly authorized by the majority vote of the qualified taxpaying electors of the City and County of Denver.

It is further stipulated that, "The Board of Water Commissioners, prior to the transmittal of the moneys involved in this suit, authorized and directed the Department of Revenue, Ex officio Treasurer, and also directed the manager of revenue, to transmit said moneys to the said Kountze Bros. Banking House at New York, to take care of the payment of all the bond

interest coupons that might be there presented, and the said moneys were transmitted by the defendant McGlone and his predecessors, in obedience to the orders and directions of the Board of Water Commissioners, and all of the transmittals were made according to the orders and directions, and according to the Charter and Ordinance provisions of the City and County of Denver."

Defendant McGlone took office on June 1, 1931. Prior to that time his predecessor in office, Collins, had transmitted "to the Banking House of Kountze Bros. in the City of New York, from time to time, as needed, money from the Water Works Fund, for the purpose of meeting payments on current and next maturing interest coupons on the Municipal Water Bonds Series 1914, Series 1923 and Series 1927, which might be there presented for payment when due. The transmittals were made from separate funds respectively, and separately kept on the official books of the Treasurer, and in separate bank accounts. The separate funds had previously been set aside by the Treasurer for such several purposes out of the proceeds of the revenues received from the operation of the Water Works System and Plant, in accordance with the Charter provisions and Ordinances of the City and County of Denver, and with the orders of the Board of Water Commissioners. The sums transmitted by Collins, Treasurer, to Kountze Bros. were properly debited by him at the time to the separate coupon accounts of the Water Works Fund, and were, by Kountze Bros., properly credited at the time in separate accounts respectively, upon their books, under and according to the direction of said Collins, and of the Board of Water Commissioners."

Defendant McGlone on taking office continued the practice of his predecessors. His immediate predecessor, Collins, had already remitted funds to take care of the June 1, 1931, interest coupons that it was estimated would be presented for payment in New York. Defendant McGlone likewise, within a few days after he as-

sumed office, remitted $20,000 to cover the July 1, 1931, interest coupons, and in July remitted $55,000 to cover the amount of August 1, 1931, interest coupons that it was estimated would be presented for payment at Kountze Bros.

On October 14, 1931, Kountze Bros. became insolvent and were declared bankrupt. At that time there were funds on deposit in the three separate coupon accounts of $25,520. As a result of the failure of Kountze Bros., defendant McGlone, on the expiration of his term of office, June 1935, was unable to turn over to his successor the funds lost in that bank. Whereupon plaintiff brought this action against the two defendants herein, based on their bond for $500,000, and also brought a separate action against defendant McGlone as principal and the Fidelity and Deposit Company of Maryland as surety on a supplemental bond taken out in accordance with a city charter provision for $100,000 covering the official duties of defendant McGlone as treasurer or custodian of the water works fund. The latter proceeding appears to have been dismissed with prejudice by the plaintiff in consideration of the payment to it by the Fidelity and Deposit Company of Maryland of $18,171.26, "and the defendant herein is now made defendant in an action brought by Fidelity & Deposit Company of Maryland against the defendant, Continental Casualty Company, wherein the Fidelity & Deposit Company of Maryland seeks recovery of the same items as are involved in this cause, and predicates its action upon the claim that it is a subrogee of the plaintiff herein or a sub-surety or co-surety for the defendant McGlone, and the defendant, Continental Casualty Company is presently defendant in two suits by different parties for the same claim or demand."

The amount of the judgment, $14,483.33, was determined by taking the amount on deposit with Kountze Bros. at the time of their failure, $25,977.50, crediting that amount with the $18,171.26 received in settlement

with the Fidelity & Deposit Company of Maryland plus the amount received as liquidating dividends from the receiver of the insolvent bank, $3,411.40, and then adding interest at six per cent. per annum on the remaining unpaid balance, $10,088.48.

It appears from the record that $477.50 out of the total sum of $25,997.50, which was in the hands of Kountze Bros. at the time of their failure, was money in the interest account of certain building site bonds of the City and County of Denver. The specifications of error relate only to the interest accounts of the three series of water bonds of the City and County of Denver heretofore mentioned, which together made up the total sum on deposit with Kountze Bros. when added to the $477.50 item. The specifications make no mention of this $477.50 building site bond account, nor is it referred to in the stipulation. The record shows no historical background concerning these building site bonds, such as exists relating to the three series of water bonds. There is nothing by which to judge whether the duties of the treasurer relating to the servicing of the interest on the building site bonds were similar to his duties in respect to paying the interest coupons on the water bonds. We are left in no position to pass upon that particular phase of the case, and our opinion and judgment apply solely to the funds in the three coupon accounts with Kountze Bros. relating to the water bonds.

It should also be added that by separate supplemental answers both defendant principal and defendant surety company pleaded the settlement and release executed by the Fidelity & Deposit Company running to the City and County of Denver, and by reason thereof asked that this cause be dismissed. This phase of the case is not included in the specification of points, and no reference to it appears in the briefs or the oral argument. In accordance with our regular practice, therefore, the points urged in the supplemental answers will be deemed to have been abandoned. *Contes v. Metros,*

111 Colo. 561, 144 P. (2d) 782; *Edwards v. Quackenbush*, 112 Colo. 337, 149 P. (2d) 809.

The findings of the trial court include this statement: "The defendant McGlone was not guilty of any moral misconduct in connection with the remittance of moneys to New York. The moneys sent by him and his predecessor were sent with the approval and under the orders of the Board of Water Commissioners of the City and County of Denver, and the transaction was shown on the books of the treasurers. McGlone simply followed the course of conduct which had been followed prior to his induction into office. The question involved in this litigation, however, is whether or not under the undisputed facts there is legal liability on the part of the defendants. The court is of the opinion that such legal liability exists, and so finds." This finding was based specifically on two cases, *Patterson et al. v. People ex rel.*, 98 Colo. 86, 53 P. (2d) 1187, and *People ex rel. v. Koenig et al.*, 99 Colo. 456, 63 P. (2d) 1235, by reason of which the court felt compelled to hold the defendants liable.

The findings and judgment of the trial court were made and entered prior to our decision in *McBride v. People*, 111 Colo. 577, 144 P. (2d) 777. Reference is made to that case and to the Koenig and Patterson cases, supra, in 155 A.L.R. 436 in a recent note on the subject of, liability of a public officer on his bond for loss of public funds due to insolvency of bank in which they were deposited. Likewise, all of the original briefs of both parties on appeal were written and filed here while the McBride case was still pending. Immediately after the opinion in that case had been announced, defendants filed a supplemental brief in support of the point that the disposition of the instant case was controlled by the McBride case. In that case we held that where an ordinance of a Colorado city of the second class expressly makes it the duty of, and orders, the city treasurer to remit certain moneys to a bank named in

the ordinance for the purpose of paying interest on bonds issued by the city, and moneys so remitted by that official in compliance with the ordinance are lost due to the failure of the bank, neither the treasurer nor the surety on his official bond is liable to the city for such loss.

In the instant case, the respective ordinances passed by the Denver City Council authorizing the issuance of the three bond issues herein involved all provided that the principal and interest of the bonds should be payable at the option of the holder either at Kountze Bros., New York City, or at the office of the city treasurer in Denver. The ordinances differ from the Trinidad ordinance in the McBride case, in that they contained no express mandate to the city treasurer directing him to remit funds to the bank named in the ordinances and in the bonds and interest coupons issued in pursuance thereof. The record shows, however, that Denver entered into a contract with Kountze Bros. whereby the latter would act as paying agent in New York City for Denver in respect to the three bond issues. The consideration for Kountze Bros. so acting was that Denver would deposit with them the sums necessary to pay the interest coupons, which it was estimated would be presented for payment in New York City, at least fifteen days in advance of the due date of the particular interest coupons, payment of which was being provided by the remittance. The record further shows that the following letter from the Denver Board of Water Commissioners, under date of November 24, 1930, was sent to Kountze Bros. in New York City:

"We find that the funds to cover the interest coupons on the Denver Municipal Refunding Water Bonds, Series 1927, due December 1st, have not been forwarded to you, as per your letter of August 3rd, 1927, 15 days prior to the interest paying date.

"We are sorry this instalment was overlooked and

will assure you that in the future the funds will be there in proper time."

Under the same date the board wrote to the then city treasurer, defendant McGlone's immediate predecessor in office, as follows:

"We are enclosing a copy of a letter from Kountze Brothers dated August 3rd, 1927, [containing the contract arrangements already described] relative to the payment of interest on Denver Municipal Refunding Water Bonds, Series 1927, and also a copy of a letter we are this day writing to them.

"Will you please be governed accordingly."

When defendant McGlone took office, therefore, he was not merely following "the course of conduct which had been followed prior to his induction into office," in the sense that he was following an inchoate habit which he could have changed had he desired not to take the line of least resistance. He, like his predecessor, made the remittances to Kountze Bros. because he found express instructions from the Denver Board of Water Commissioners directing his office to make the remittances in accordance with the terms of an agreement made with the New York banking house. It is not contended that the order of the Board of Water Commissioners directing the city treasurer to make the remittances was ultra vires. Nor is it argued that the financial arrangement between the board and Kountze Bros. was either ultra vires or illegal. The creation of the Board of Water Commissioners, as a valid body under the Denver charter, is not questioned. No attack is made on the legality of the elections authorizing the issuance of bonds, nor on the ordinances of the city council authorizing the issuance of the respective bond issues.

The facts in this case, therefore, would seem to make the McBride case, and not the Patterson and Koenig cases, controlling. In the two latter cases we held that the respective county treasurers there involved had acted gratuitously and without any definite legal sanc-

tion to support their remittances to the same New York bank, the insolvency of which has given rise to this litigation.

In this case the city was under valid obligation to the bondholders to pay the bond interest either in Denver, Colorado, or at Kountze Bros. in New York City, at the option of the bondholder. It was further under valid obligation to Kountze Bros. to make remittances to cover the estimated presentation of interest coupons for payment in New York City at least fifteen days before the due date of the coupons.

The treasurer in turn was not merely authorized, but directed to pay the principal of the bonds and also the interest coupons, and—unlike his other payments—was expressly relieved of the necessity of obtaining warrants therefor by section 297B, article XIX of the Denver charter.

Finally, the treasurer was expressly directed by his superior officers, the Denver Board of Water Commissioners, to make the remittances to Kountze Bros. in such a manner as to comply with the city's contract with that banking house.

The existing circumstances left no field of choice for defendant treasurer—his not to make reply, his not to reason why, his but to obey. The chain of circumstances in this case differs only from that in the McBride case in that here there are a few more links, but the chains are alike in that they tie both treasurers to one specified course of conduct. They leave them no option in the matter. A failure to comply with the directions given them in respect to making provision for the payment of the interest coupons, would, in our judgment, make them liable for a breach of their bonds, even as they have been charged with a breach for failure to turn over the lost funds to their successors in office.

Applying the rule of strict accountability to defendant treasurer which we have followed in previous cases

in this jurisdiction, we are of the opinion that this case comes under the exception to that rule set forth in the McBride case and recognized in the three· federal cases therein cited. Here, we are of the opinion that the obligation in the·bond to "faithfully and promptly perform the duties of said office," included the duty of making the remittances to Kountze Bros. in New York on the time schedule ordered by the Denver Board of Water Commissioners.

The judgment accordingly is reversed.

### On Petition for Rehearing.

The court is of the opinion that any new matters presented in the petition for rehearing are answered either by the opinion or by the stipulation between the parties set forth therein.

Petition for rehearing denied.

MR. JUSTICE HILLIARD was absent at the time of oral argument, and does not participate.