## No. 15,817.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND *v.*
CONTINENTAL CASUALTY COMPANY.
(193 P. [2d] 266)

Decided April 19, 1948.

Messrs. BANNISTER, BANNISTER & WELLER, Mr. RANDOLPH S. SIZER, for plaintiff in error.

Messrs. BANCROFT, BLOOD & LAWS, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, to which we hereinafter refer as "Fidelity," as surety on a bond in which the treasurer of the City and County of Denver was the principal, sued the Continental Casualty Company, hereinafter designated as "Continental," as surety under another obligation on which the treasurer above mentioned was the principal. The basis of the suit was contribution as cosurety, and the amount claimed was $15,142.72. After various motions, resistance to motions and affidavits had been filed, the trial court entered summary judgment in favor of Continental dismissing the complaint of Fidelity. The latter seeks reversal here.

The events leading up to this litigation, as shown by the record, include:

1. Failure of the banking firm of Kountze Brothers, in New York City, October 14, 1931. McGlone, then treasurer of the City and County of Denver, had on deposit with that bank at the time various funds to meet maturing interest coupons of the city and county. By reason of that bank failure McGlone was unable to turn over to his successor $25,520 of Denver's water works funds.

2. Denver brought suit to recover this loss on the $100,000 bond on which McGlone was principal and Fidelity was surety. Before the case came to trial, Fidelity made a settlement with Denver by paying $18,171.26; Fidelity was released from any further liability on the bond as surety, and we are informed by the brief of Fidelity's counsel that, although the principal, McGlone, was not included in the formal release, subsequently the suit against him was dismissed with prejudice for lack of prosecution. Continental was not consulted at the time of the Fidelity settlement, which was consum-

mated not only without its approval but also without its knowledge.

3. Having thus recovered $18,171.26 on the Fidelity bond, Denver sued McGlone, as principal, and Continental, as surety, on the Continental bond of $500,000 for the balance of the loss incurred by reason of the Kountze Brothers bank failure. Continental resisted, and suffered adverse judgment in the amount of $14,483.33 in the trial court. We reversed that judgment in *McGlone v. City and County of Denver,* 114 Colo. 154, 163 P. (2d) 646, holding that neither the principal, McGlone, nor the surety, Continental, was liable under the circumstances presented by the record. This case was appealed by the City and County of Denver to the United States Supreme Court and there "dismissed for want of a properly presented federal question." 327 U. S. 770, 66 Sup. Ct. 969, 90 L. Ed. 1000.

4. In the meantime, Fidelity, after making its compromise settlement with Denver in the amount of $18,171.26, as hereinbefore stated, brought the instant suit against Continental for contribution for $15,142.72. The latter amount, being five-sixths of the former, represented what Fidelity asserted was Continental's proportionate amount of the coverage of the two bonds. In support of its theory that there existed a cosuretyship between the two surety companies, Fidelity relies upon the fact that both bonds had the some obligee (the City and County of Denver) and the same principal (Wm. F. McGlone as manager of revenue and ex officio treasurer of the City and County of Denver).

The Continental bond, in the amount of $500,000, was the general statutory bond and covered all of the acts of McGlone in his official capacity. The Fidelity bond, in the amount of $100,000, was described as having been issued under section 297-B, 1927, 264 (d), article XIX of the charter of the City and County of Denver, which provides, inter alia: "The treasurer of the City and County of Denver shall open and keep a separate ac-

count for the Water Works Fund into which shall be placed all revenues received from the operation of the Water Works system and plant * * *," and perform other duties as treasurer of said water works fund. A recital in the bond also includes the statement that; "Section 264-A (297-B of 1927) of the charter of the City and County of Denver provides, further, that the treasurer shall give such additional bond conditioned in such manner as shall be determined by the Board of Water Commissioners;" and that, "whereas, in accordance with said section of the Charter, the Board of Water Commissioners has by resolution duly adopted determined that the Treasurer of the City and County of Denver shall give an additional bond in the sum of $100,000 * * *." From that point reference is made to McGlone as "Treasurer of the Board of Water Commissioners" or as "Treasurer or custodian of the Water Works Fund."

As will be noted from our opinion in *McGlone v. Denver, supra,* this litigation concerns the moneys from the water works fund that McGlone had forwarded to the bank of Kountze Brothers in New York under the directions of the Denver Board of Water Commissioners and which were subsequently lost in the failure of that bank. It also may be observed that, although the Fidelity bond was more limited in its coverage than the Continental bond, the funds involved in the Kountze Brothers failure, being water works funds, would appear to be included in the coverage clause of both bonds.

When our opinion in *McGlone v. Denver, supra,* became final, Continental, in support of its motion for summary judgment, presented it as being a bar to any further liability to Fidelity on the basis of cosuretyship. The motion for summary judgment was granted after the abstract of record and all of the briefs in *McGlone v. Denver, supra,* had become part of the record in the instant case as exhibits attached to the pleadings.

The contention of counsel for Fidelity, in their argument both in the trial court and here, is that it is enti-

tled to prove, notwithstanding our ruling in *McGlone v. Denver, supra,* that McGlone, as principal, and Continental, as surety, are in fact liable to the City and County of Denver under Continental's bond by virtue of paragraph 106, section 58, of the Denver charter, 1927; and that this section was not referred to in the briefs by the parties in *McGlone v. Denver, supra,* nor included in the stipulation of facts and law between the parties, upon which our opinion was based. Counsel for Fidelity state that the compromise on the Fidelity bond was effected with the City and County of Denver prior to our decision in *McBride v. People ex rel.,* 111 Colo. 577, 144 P. (2d) 777; 155 A. L. R. 437, wherein we announced an exception to the general rule of strict liability of public officials under their bonds; that notwithstanding the McBride case, they are of the opinion that McGlone was liable under both bonds, and had the case of *McGlone v. Denver, supra,* been tried, as they believe it should have been, McGlone, and Continental as surety, both would have been held liable. Counsel further contend that they are not bound by the opinion in that case for the reason that they did not formally participate in it, although admitting that, as interested observers, they followed its course both in the trial court and here.

We pass over the arguments of counsel for Continental, that that decision, *McGlone v. Denver, supra,* makes this case res judicata, because Fidelity was not a party to that litigation. We also disagree with the contention that *McGlone v. Denver, supra,* can be applied in the instant case as the " law of the case," for the similar reason that "the law of the case" is applicable only when the same parties are involved in a retrial of a cause.

Counsel for Fidelity state that the most that can be said for *McGlone v. Denver, supra,* is that it is stare decisis. Using that position as a premise, we believe that our decision in that case has in effect operated to dis-

charge Continental from any claim of cosuretyship that can properly be asserted by Fidelity.

(1) Counsel for Fidelity quote the first paragraph of section 275, Stearns on The Law of Suretyship (4th ed.) page 495: "Whenever the debt matures a surety may pay the same and enforce contribution, even though no demand is made upon him by the creditor. It is not necessary to wait for the liability to be fixed by judgment, nor for suit to be started or threatened." But that paragraph is followed by: "If a breach of the principal contract has occurred so that action might be maintained on the suretyship undertaking, a payment by the surety or guarantor is not voluntary. But if the surety paying might have successfully resisted the claim, the payment must be considered voluntary, and contribution will not be allowed."

Fidelity's situation would appear to come under the case of payment having been made where the alleged cosurety had a good defense. To like effect is Restatement of the Law—Restitution, page 371, section 83: "A person who with another became subject to an obligation or a supposed obligation upon which, as between the two, neither had a prior duty of performance, and who has made payment thereon although the other had a defense thereto (a) is not entitled to contribution, if he became subject to the obligation without the consent of the other;"

(2) A second reason why we believe Fidelity can not recover from Continental is the fact that Continental and its principal were judicially discharged from liability to Denver. The situation is well stated in Freeman on Judgments (5th ed.), vol. 1, p. 1026, §466: "By the very nature of a surety's contract and obligation his liability is ordinarily conditioned upon that of his principal. Consequently a judgment against the latter fixing the amount of his liability, whatever may be its effect as evidence against the surety, conclusively establishes a maximum limit beyond which he cannot be held liable.

And upon the same reasoning, a judgment in favor of the principal, unless based upon some defense purely personal to him, such as infancy, is conclusive in favor of the surety. This is not upon principles of res judicata or estoppel but because the surety cannot be liable if the principal is not; the obligation of the surety is merely incidental to that of the principal and when the judgment extinguishes the latter, the former goes with it."

■ ■ Counsel for Fidelity contend the foregoing principle is similar to that followed in the ruling in *Portland Gold Mining Co. v. Stratton's Independence,* 158 Fed. 63; that it applies solely to suretyship, and has nothing to do with cosuretyship. One answer to this contention is that the relation of cosureties can not exist without there first being a principal and surety relationship. We are of the opinion that when both a principal and his surety have been adjudged not liable, it also may be said that the obligation of the surety is merely incidental to that of the principal and when a judgment extinguishes the latter the former goes with it, including any rights of contribution that might have existed in favor of another surety had the principal and first surety been held to be bound instead of to be not liable. We have been referred to no case where a surety has been held liable for contribution under a bond upon which the principal has been discharged from liability, or been judicially exonerated.

Judgment affirmed.